[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter was commenced by the plaintiffs' complaint, dated March 18, 1993, which complaint was subsequently amended on June 8, 1993. On August 16, 1993, the defendants filed an answer to the complaint and special defenses to the fourth, fifth and sixth counts of the aforementioned complaint. Also, the defendants filed a counterclaim on August 16, 1993. CT Page 7019 Thereafter, on September 17, 1993, the plaintiffs filed a reply to the defendants' special defenses, an answer to the counterclaim and a special defense. Thereafter, on November 19, 1993, the defendants filed an answer to the plaintiffs' reply.
The plaintiffs are Timothy Rusk and Renee Rusk. The defendants are Autumn Homes, Inc., a Connecticut corporation, and William Stronkowsky. Mr. Stronkowsky is the Vice President of Autumn Homes, Inc., and he has been sued individually by the plaintiffs.
In July 1990, the plaintiffs purchased a building lot at 15 Mulberry Street, Naugatuck, Connecticut. On June 30, 1991, the plaintiff signed a contract with the defendant, Autumn Homes, Inc., whereby it would build a home for them on said lot (Exhibit A). The contract price was $105,000.00. However, that contract was cancelled when the plaintiffs could not get approval for a mortgage. As a result, a second contract was signed by the parties whereby the defendant, Autumn Homes, Inc., would build a home for the plaintiffs for a price of $95,000.00, plus $2,000.00 in extras. This contract was signed on September 20, 1991 (Exhibit B). To help finance the building of said home, the defendant, William Stronkowsky, made a loan of $11,000.00 to the plaintiffs (Exhibits C2 and C3). However, no money actually was given to the plaintiffs by Mr. Stronkowsky. This loan was subsequently paid in full and a release therefor was given to the plaintiffs by the defendant, William Stronkowsky (Exhibit E). Mr. Rusk testified that a Certificate of Occupancy was obtained for said house in February 1992. He testified that one week after the Certificate of Occupancy was issued, he and his wife moved into the home. Mr. Rusk testified that almost immediately after moving into said home, there were problems. The plaintiffs called Tony Smith, a general contractor for thirty years, as an expert witness. The defendant, William Stronkowsky, a contractor for twenty-three years, also testified. The court will now take each of the plaintiffs' complaints one by one and review them.
The plaintiff, Timothy Rusk, testified that the defendant, Autumn Homes, Inc., did not provide shutters and screens, as it was agreed. There was only one window with a screen, according to Mr. Rusk. There were sixteen windows and two doors without them. Mr. Stronkowsky denied that Autumn Homes, Inc. had to provide screens under the contract. He did admit the plaintiffs were owed shutters, but he testified the plaintiffs never picked CT Page 7020 out the color for the shutters. Mr. Rusk said that on three occasions he asked Mr. Stronkowsky about the screens and he was told that they were ordered, that when they came they were the wrong size, wrong type and the third time Mr. Stronkowsky said he was still waiting for the screens. Mr. Rusk testified that in the summer of 1992, the plaintiffs purchased screens and installed them at a cost of $273.91 (Exhibit L1-L3). Mr. Smith stated shutters for the house would cost $200.00 to $300.00.
Timothy Rusk testified he had to spend large sums of money to properly grade the property and attempt to alleviate a water problem on the property. He testified that when a Certificate of Occupancy was issued, he asked Mr. Stronkowsky when he was going to finish the work on his home. When the plaintiffs incurred a serious drainage problem, they asked Mr. Stronkowsky to dig up the curtain drains with a backhoe to see if they worked. Mr. Stronkowsky then said he was never coming back to their home to do any work. As a result, the plaintiffs rented a York rake and purchased some 300 yards of loam in April and August 1992. The rental of the York rakes cost the plaintiffs $642.89 (Exhibit H). Mr. Rusk tried to grade the property himself, but he was not successful. Thereafter in the summer of 1992, the plaintiffs paid Capital Contractors, Inc. $1,900.00 to regrade their property and for loam therefor. Mr. Stronkowsky testified that he left the plaintiffs' property properly rough graded in February 1992. He testified that the best time to put down loam and seed is when you finish rough grading, in this case, February 1992. This statement surprised the court but when the court questioned Mr. Stronkowsky about it, he insisted that it was proper to seed and loam the property in the month of February. Mr. Stronkowsky denied that the plaintiffs ever called him to come and finish the grading. He said that the plaintiffs caused any problem with the rough grading when they tried to grade the property themselves. Mr. Rusk testified that whenever it rains heavy for one hour, or steady for a day, a large pool of water forms in his front yard. As a result, the plaintiffs have to put down pallets so they can get in and out of their front doors when it rains as aforesaid (Exhibit F1). Tony Smith testified that the plaintiffs' home was built too low in the ground. He stated that to alleviate this pooling (water) problem in the front yard, a curtain drain must be constructed, starting 20 feet in front of the house and going out for 100 feet, filled with crushed stone. He stated this costs $12.50 per foot, or $1,250.00. He further stated he could not tell if the footing drains (curtain drains) are working around the CT Page 7021 foundation. However, he does not believe that they are, and he believes that the pipe may be either clogged or broken. Mr. Stronkowsky and Mr. Smith testified that the plaintiffs' lot was a former gravel bank. Mr. Stronkowsky testified that that fact plus the fact that the lot has a high water level are factors in the plaintiffs' water problems.
Mr. Rusk testified that some of the kitchen cabinets are missing handles (Exhibits M1 and M2). Mr. Stronkowsky testified that he was not sure if the plaintiffs wanted cabinet handles, but that Autumn Homes, Inc. left sufficient handles there for all of the cabinets. Tony Smith testified that the cost of the cabinet handles, including installation, would be $110.00.
Mr. Rusk testified that the defendants never left them keys for the front door and basement door. Mr. Stronkowsky said keys were left for the plaintiffs for these doors. Mr. Smith said it would cost $400.00 to replace all the locks in the house. However, it would be cheaper to put two new locks on the front door and basement door. That would cost $250.00 to $300.00, according to him.
There was also testimony by Mr. Rusk that a cover for the motor in the hot tub in said house was never provided by the defendant, Autumn Homes, Inc. Mr. Smith testified that the cost to obtain such a cover would be $50.00 (Exhibit G).
Mr. Smith testified concerning the cracks in the basement floor. Mr. Rusk testified that water was coming into the cellar through cracks in the floor. Mr. Smith testified that if there were curtain drains around the plaintiffs' house, they would have failed if water is coming in through the cracks in the cellar floor. Mr. Stronkowsky testified that these cracks were part of the normal settling process and that under paragraph #4 of the September 20, 1991 contract between the parties (Exhibit B), the defendants were not liable for these cracks. The court, the attorneys and the parties viewed the premises at the conclusion of the trial. These cracks were severe and uneven and in the court's opinion, were not the result of the settling process. Mr. Smith testified it would cost $400.00 to repair these cracks.
One corner of the basement floor was left open and not covered with cement. The testimony of Mr. Smith was that it would cost $75.00 to fill in the area with cement. Mr. Smith CT Page 7022 also testified that it would be a good idea to have the corner portion of the floor open and install a sump pump there, in case water came into the cellar in the future. He stated the cost of purchasing and installing a sump pump would be $350.00.
As stated hereinbefore, the court viewed the premises and found that the testimony of the plaintiffs' witnesses was quite accurate relative to the problems incurred by the plaintiffs when they took possession of the subject premises.
After hearing the evidence, the court finds the issues on Counts One, Two and Three for the plaintiffs on their Amended Complaint, and against the defendant, Autumn Homes, Inc. The plaintiffs have sustained their burden of proof by a fair preponderance of the evidence on those counts. As to Counts Four, Five and Six of said Amended Complaint, the court finds the issues for the defendant, William Stronkowsky, as the plaintiffs did not sustain their burden of proof on the allegations set forth in these counts. The plaintiffs did not prove by a fair preponderance of the evidence that the defendant, William Stronkowsky, ever acted in an individual capacity when dealing with them in the construction of their home except for the matter of the aforementioned $11,000.00 mortgage which was repaid in full. Therefore the defendants did sustain their burden of proof on their third special defense. However, the defendants did not sustain their burden of proof on their first and second special defenses.
As to the defendants' two-count counter claim, the court finds the issues for the plaintiffs as the defendants did not prove the allegations stated therein.
Therefore, the court enters judgment for the plaintiffs and against the defendant, Autumn Homes, Inc., only, in the amount of $5,176.80 plus costs. This is arrived at by finding that the defendant, Autumn Homes, Inc., is liable to the plaintiffs in the following amounts for the following items:
1. Grading performed by Capital Contractors, Inc. $1,900.00
 2. Grading performed by plaintiff, Timothy Rusk with rented York rakes $ 642.89
3. Installation of curtain drain in front yard $1,250.00 CT Page 7023
4. Shutters for windows $ 250.00
 5. Missing kitchen cabinet handles and installation thereof $ 110.00
 6. Keys for the rear door and basement door $ 250.00 (New locks needed for each door)
7. Cover for motor in hot tub $ 50.00
8. Repair cracks in basement floor $ 400.00
9. Fill in corner of basement with cement $ 50.00
10. Window and door screens $ 273.91
Judgment may enter accordingly.
WILLIAM J. SULLIVAN, J.